# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL     'O'

| | |
|---|---|
| Case No. | 2:17-cv-03117-CAS (ASx) |
| Title | United States v. $36,000 in U.S. Currency |
| Date | October 16, 2017 |

Present: The Honorable **CHRISTINA A. SNYDER**

| Catherine Jeang | Myra Ponce | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:     Attorneys Present for Defendants:

Frank Kortum     Not Present

**Proceedings:** MOTION FOR DEFAULT JUDGMENT AGAINST THE INTERESTS OF KNOWN POTENTIAL CLAIMANT CLAUDE J. BISHOP-WILLIAMS AND ALL UNKNOWN POTENTIAL CLAIMANTS (Dkt. 17, filed September 12, 2017)

## I. INTRODUCTION

On April 26, 2017, the United States of America ("the government") initiated this *in rem* forfeiture action by filing a verified complaint against defendant $36,000 in U.S. currency ("the defendant currency") pursuant to 21 U.S.C. § 881(a)(6). Dkt. 1 ("Compl."). On August 11, 2017, the Clerk entered default against known potential claimant Claude J. Bishop-Williams ("Bishop-Williams") and all other unknown potential claimants to the defendant currency. Dkt. 16. On September 12, 2017, the government filed the instant motion for default judgment. Dkt. 17 ("Mot."). For the foregoing reasons, the Court grants the government's motion and enters default judgment.

## II. BACKGROUND

On September 7, 2016, agents with the U.S. Drug Enforcement Agency ("DEA") conducted surveillance inside Terminal 3 at the Los Angeles International Airport ("LAX"), anticipating the arrival of a flight from Boston, Massachusetts. DEA agents observed that Steve Pierre ("Pierre") appeared to be travelling with Bishop-Williams. Pierre appeared to wait for Bishop-Williams near the jetway. Both men then walked into a restroom and subsequently waited together at the luggage carousel. Compl. ¶ 8. When approached by DEA agents, Bishop-Williams stated that his luggage contained bulk currency and agreed to speak further with the agents at their LAX office. DEA agents

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-03117-CAS (ASx) | Date | October 16, 2017 |
| Title | United States v. $36,000 in U.S. Currency | | |

also spoke with Pierre, but the interview was terminated and Pierre exited the terminal. Id. ¶ 9.

DEA agents searched Bishop-Williams's luggage and discovered the defendant currency distributed between an envelope in Bishop-Williams's backpack and a shoe inside his roller bag. Id. ¶ 10. Bishop-Williams claimed that he was working in Los Angeles as a production manager with several musical artists, including Clinton Sparks ("Sparks"), and had not booked a return flight to Boston because he was unsure how long he would be staying. Id. ¶¶ 11–12. Bishop-Williams said he would be staying at Sparks's apartment, but the DEA agents were unable to contact Sparks at the telephone number provided. Id. ¶ 13. Bishop-Williams initially claimed the defendant currency was for a business related to Sparks, but he was vague about the precise purpose to which the defendant currency would be put. Bishop-Williams later stated that Sparks had wired the cash to his bank account as a way to hide it from Sparks' wife who was divorcing him. Id. ¶ 14. Bishop-Williams provided the agents with two cash withdrawal receipts from the Transportation Federal Credit Union, reflecting a withdrawal of $4,000 and $30,000 on August 10 and September 1, 2016, respectively, in denominations of 285 $100 bills, 70 $50 bills and 100 $20 bills. The defendant currency was in the denominations of 335 $100 bills and 125 $20 bills. Id. ¶ 15.

Following the search of Bishop-Williams's luggage, a trained narcotics detecting canine, "Luc," alerted to the scent of a controlled substance on the defendant currency. At the time of the alert, Luc was a sophisticated, trained narcotics detection canine, certified by the Los Angeles Police Department and the National Police Canine Association. The canine had received training and was tested in the detection of cocaine, methamphetamine, heroin, marijuana, and opium. The canine alerts only to the scent of narcotics for which the canine is trained. The canine's training included routinely checking both circulated and uncirculated plastic, boxes, latex, tape, metal, money, and food to ensure that the canine does not alert to the actual odor of currency itself but instead to the odor of controlled substances on the currency. Id. ¶ 15.

Pierre has a history of using couriers to transport bulk cash from Boston to the West Coast. On March 10, 2016, Rosa Livingston ("Livingston") had $71,640 in U.S. currency seized from her at Logan International Airport in Boston as Livingston attempted to fly to Las Vegas, Nevada. During Livingston's interview, she stated that she was traveling to Las Vegas to meet Pierre and that she was paid $3,000 to transport the cash. Id. ¶ 17. On April 6, 2016, Pierre's brother, Ruben Pierre, had $161,213 in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-03117-CAS (ASx) | Date | October 16, 2017 |
| Title | United States v. $36,000 in U.S. Currency | | |

U.S. currency seized from him at Logan Airport as he attempted to fly to Las Vegas. Id. ¶ 18. Bishop-Williams wired Pierre funds via Western Union on two separate occasions in December 2015 and January 2016, both times from Massachusetts to Glendora, California. Id. ¶ 19. Bishop-Williams also has an April 2015 arrest record in Medford, Massachusetts for conspiracy to violate drug laws. Id. ¶ 20.

The government alleges that the defendant currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it was furnished or intended to be furnished in one or more exchanges for a controlled substance, represents or is traceable to proceeds of illegal narcotics trafficking, or was used or intended to be used to facilitate one or more exchanges of a controlled substance, in violation of 21 U.S.C. § 841 et seq. Id. ¶ 21.

## III. LEGAL STANDARDS

Pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, a court may order default judgment following the entry of default by the Clerk of Court. PepsiCo, Inc. v. California Security Cans., 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002). Upon entry of default, the factual allegations in the plaintiff's complaint, except those relating to damages, are deemed admitted. Id. at 1175. Although the court has discretion to grant or deny a motion for default judgment, id. at 1174, the Ninth Circuit has directed that courts consider the following factors (collectively, the Eitel factors) in exercising this discretion: (1) the possibility of prejudice to plaintiff, (2) the merits of plaintiff's substantive claims, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether defendant's default was the product of excusable neglect, and (7) the strong policy favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## IV. DISCUSSION

In its motion for default judgment, the government indicates that the procedural requirements governing civil forfeiture and default judgment have been satisfied in this case and argues that the Eitel factors weigh heavily in support of entering default judgment. Mot. at 3–8. The Court addresses both the relevant procedural rules and the application of the Eitel factors below.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-03117-CAS (ASx) | Date | October 16, 2017 |
| Title | United States v. $36,000 in U.S. Currency | | |

### A. Procedural Requirements

Any property subject to forfeiture to the United States may be seized in the manner set forth in 18 U.S.C. § 981(b). See 21 U.S.C. § 881(b). Pursuant to 18 U.S.C. § 981(b)(2)(A), a seizure may be made without a warrant if a complaint for forfeiture has been filed in the U.S. district court and the court issued an arrest warrant *in rem* pursuant to the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supp. R."). Supplemental Rule G includes several judicial authorization, process, and notice requirements. The government must file a verified complaint that states the grounds for jurisdiction and venue, describes the property being forfeited with reasonable particularity, identifies the statute under which the forfeiture action is brought, and states sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial. Supp. R. G(2)(a)–(f). The clerk must then issue a warrant to arrest the property if it is in the government's possession, custody, or control; and process must be executed on the property. Supp. R. G(3)(b)–(c). The government is required to give notice to potential claimants by publication and by sending direct notice of the pending forfeiture action to any person who reasonably appears to be a potential claimant. Supp. R. G(4)(a)–(b). Local Admiralty Rule C.4(a) also requires notice by publication and direct notice by first-class mail to persons known to have an interest in the property.

The Court finds that the government has satisfied the requirements of 18 U.S.C. § 981(b)(2)(A), Supplemental Rule G, and Local Admiralty Rule C.4(a). As mandated by Supplemental Rule G(2), the government filed verified complaint on April 26, 2017 that states the grounds for jurisdiction and venue, describes the property being forfeited with reasonable particularity, identifies the statute under which the forfeiture action is brought, and includes sufficient factual detail to support a reasonable belief that the government will be able to meet its burden of proof at trial. In accordance with Supplement Rule G(3), the Clerk immediately issued an arrest warrant *in rem* for the defendant currency; and on May 8, 2017, process was executed upon the defendant currency by the U.S. Marshals Service. Dkt. 8; Kortum Decl. ¶ 4. As required by Supplemental Rule G(4)(a), the government posted notice of the forfeiture on an official government website (www.forfeiture.gov) for at least 30 consecutive days starting on May 8, 2017. Dkt. 10. The government also sent notice to known potential claimant Bishop-Williams pursuant to Supplemental Rule G(4)(b). On May 2, 2017, the government sent notice of the complaint to Bishop-Williams at his last known address in Malden, Massachusetts and to the address of his attorney, Albert Perez, Jr. ("Perez"), in West Covina, California. The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-03117-CAS (ASx) | Date | October 16, 2017 |
| Title | United States v. $36,000 in U.S. Currency | | |

notices were sent by regular U.S. mail and certified mail with a claim letter describing the defendant currency and giving notice as to the time within which a claim and answer were required to be filed as provided by the Local Rules. See Supp. R. G(4)(b)(ii). The certified mail to Bishop-Williams was returned; however, the letter to Perez was delivered and received on May 4, 2017. Kortum Decl. ¶¶ 5–6; see Supp. R. G(4)(b)(iii) ("Notice may be sent to the potential claimant or to the attorney representing the potential claimant.")

In addition, Local Rule 55–1 requires that an application for default judgment be accompanied by a declaration (1) indicating when and against what party default has been entered; (2) identifying the pleading as to which default has been entered; (3) indicating whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative; (4) stating that the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) does not apply; and (5) affirming that notice has been served on the defaulting party if required by Rule 55(b)(2). C.D. Cal. L.R. 55–1. The Court finds that the government also has satisfied these requirements. Assistant U.S. Attorney Frank D. Kortum submitted a declaration indicating that default was entered against the interests of Bishop-Williams and all unknown potential claimants on April 7, 2017. Kortum Decl. ¶ 11. The declaration also states, on information and belief, that Bishop-Williams is neither a minor nor incompetent and does not serve in the U.S. military therefore the Servicemembers Civil Relief Act does not apply. Id. ¶¶ 9–10. Kortum also states that on September 12, 2017, notice of the instant motion for default judgment was served by U.S. mail on Bishop-Williams at his last known addresses. Id. ¶ 12. See C.D. Cal. L.R. 55–1.

### B.     Application of the *Eitel* Factors

The Court first addresses "the merits of plaintiff's substantive claim [and] the sufficiency of the complaint." Eitel, 782 F.2d at 1471. To prevail in an action under 21 U.S.C. § 881(a)(6), the government must prove by a preponderance of the evidence that the property was "(1) furnished or intended to be furnished in exchange for a controlled substance; (2) traceable to such an exchange; or (3) used or intended to be used to facilitate a violation of federal drug laws." United States v. $191,910 in U.S. Currency, 16 F.3d 1051, 1071 (9th Cir. 1994), superseded by statute on other grounds, Civil Asset Reform Act of 2000 ("CAFRA"), Pub. L. No. 106–185, as recognized by United States v. $80,180 in U.S. Currency, 303 F.3d 1182, 1184 (9th Cir. 2002); see also United States v. $100, 348 in U.S. Currency, 354 F.3d 1110, 1116 (9th Cir. 2004) (noting that CAFRA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:17-cv-03117-CAS (ASx) | Date | October 16, 2017 |
|---|---|---|---|
| Title | United States v. $36,000 in U.S. Currency | | |

raised the government's burden of proof from probable cause to a preponderance of the evidence). When the government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, it must also establish a substantial connection between the property and the offense. 18 U.S.C. § 983(c)(3). "The determination whether the government has met its burden of proof is based on the aggregate of the facts, including circumstantial evidence." United States v. $49,790 in U.S. Currency, 763 F. Supp. 2d 1160, 1166 (N. D. Cal. 2010) (citing United States v. $42,500 in U.S. Currency, 283 F.3d 977, 980 (9th Cir.2002)).

      The Court finds that the factual allegations in the complaint, considered in the aggregate, are sufficient to satisfy the government's burden of proof. First, a sophisticated narcotics-detection canine alerted to the scent of a controlled substance on the defendant currency when Bishop-Williams's luggage was searched at LAX. See Currency, U.S. $42,500, 283 F.3d at 982–83 (finding that a positive alert by a narcotics detection canine is "an important factor in determining probable cause" and provides evidence of a link between seized money and controlled substances); see also United States v. $22,474 in U.S. Currency, 246 F.3d 1212, 1216 (9th Cir. 2001) (explaining that because of more sophisticated training a narcotics detection canine would not alert to currency unless it had recently been in proximity to cocaine). Second, Bishop-Williams was carrying a substantial amount of cash, which supports an inference that money was drug-related. See Currency, U.S. $42,500, 283 F.3d at 981–82 (noting that a large amount of cash is "strong evidence" that the money was furnished or intended to be furnished in return for drugs). Third, Bishop-Williams's vague and inconsistent statements regarding the source of the money and his reasons for carrying it also support an inference that the money was drug-related. See United States v. $215,300 U.S. Currency, 882 F.2d 417, 419 (9th Cir. 1989) (attempts to avoid detection by concealing or lying about the money supported an inference that the money was drug-related). Finally, Bishop-Williams has a drug-related arrest record in Massachusetts and was travelling with and had previously wired funds to Pierre, an individual known to use couriers to transport bulk cash from Boston to the West Coast. See United States v. U.S. Currency $83,310.78, 851 F.2d 1231, 1236 (9th Cir. 1988) (evidence of prior drug convictions supports inference that money was part of an illegal drug transaction). These allegations, viewed in the aggregate, demonstrate by a preponderance of the evidence that the defendant currency is subject to forfeiture under 21 U.S.C. § 881(a)(6).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-03117-CAS (ASx) | Date | October 16, 2017 |
| Title | United States v. $36,000 in U.S. Currency | | |

The remaining Eitel factors—the possibility of prejudice to the plaintiff, the sum of money at stake, the possibility of a dispute concerning material facts, whether the default was due to excusable neglect, and the policy favoring decisions on the merits—also generally weigh in favor of granting the government's motion for default judgment. First, denying the motion would prejudice the government because it would be required to continue litigating this action even though no potential claimants have appeared. Second, the sum of money at stake must be considered in relation to the seriousness of the conduct. See PepsiCo, 238 F. Supp. 2d at 1177. Here, the amount of money is substantial, but the government has demonstrated by a preponderance of the evidence that it was used in violation of federal drug laws. Third, there is no possibility of a dispute concerning material facts because no claim or answer has been filed. Fourth, there is no indication that default was the result of excusable neglect because the government fully complied with the notice provisions of the Local Rules and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Finally, although the Court should decide cases on the merits whenever possible, Eitel, 782 F.2d at 1472, the failure of Bishop-Williams or any other potential claimant to file an answer "makes a decision on the merits impractical, if not impossible." PepsiCo, 238 F. Supp. 2d at 1177.

## V. CONCLUSION

In accordance with the foregoing, the government's motion for default judgment is **GRANTED**. The defendant currency of $36,000 is hereby forfeited to the government pursuant to Section 881(a)(6). All right, title, and interest in the defendant currency is vested in the United States. The Clerk is instructed to enter judgment in favor of the United States.

**IT IS SO ORDERED**.

| | 00 | : | 02 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |